# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
### AT CHATTANOOGA

| | | |
|---|---|---|
| TACO MAMACITA, LLC, *et al.*, | ) | |
| | ) | |
| *Plaintiffs*, | ) | Case No. 1:21-cv-62 |
| | ) | |
| v. | ) | |
| | ) | Judge Atchley |
| WILCO HOLDINGS, LLC, *et al.*, | ) | Magistrate Judge Lee |
| | ) | |
| *Defendants*. | ) | |

## MEMORANDUM OPINION AND ORDER

Before the Court are Defendants' Motion to Dismiss for Lack of Jurisdiction Under Rule 12(b)(2) and Improper Venue Under Rule 12(b)(3), or Alternatively, to Transfer Venue [Doc. 42], and Motion to Stay Case Pending Proceedings at the Trademark Trial and Appeal Board [Doc. 45]. As an alternative to dismissal, Defendants ask the Court to transfer the case to the Northern District of Alabama. Plaintiffs oppose both motions. For reasons that follow, the Motion to Dismiss for Lack of Jurisdiction Under Rule 12(b)(2) and Improper Venue Under Rule 12(b)(3), or Alternatively, to Transfer Venue [Doc. 42], will be **GRANTED IN PART**. All Defendants except Wilco Holdings, LLC ("Wilco"), and Taco Mama Hillsboro Village, LLC ("TMHV"), will be **DISMISSED** for lack of personal jurisdiction. The Motion [Doc. 42] will be **DENIED** as to all remaining requests for relief. The Motion to Stay Case Pending Proceedings at the Trademark Trial and Appeal Board [Doc. 45] will be **GRANTED** and this matter **STAYED** pending further Order of the Court.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs Taco Mamacita, LLC, and Taco Mamacita Nashville, LLC, are both Tennessee limited liability companies who seek injunctive relief and damages arising from the allegedly

unlawful use of the trademark TACO MAMACITA® by Defendants. [Doc. 1 at pg. 1, ¶ 1]. Defendants are 25 Alabama limited liability companies, one or more of which operate restaurants under the name "Taco Mama, A Taco Bar." [*Id.* at pg. 1 & ¶ 35]. Plaintiffs Taco Mamacita and Taco Mamacita Nashville have their principal places of business in Chattanooga and Nashville, respectively, where they operate restaurants. [*Id.* at ¶ 2].

Plaintiffs allege that the first Taco Mamacita restaurant opened in Chattanooga in 2008 and the second opened in Nashville in 2009. [*Id.* at ¶ 32]. Taco Mamacita, through its predecessor company Taco Rosa, LLC, owns U.S. Trademark Registration No. 3759845 for the word and design mark TACO MAMACITA® in International Class 43 for restaurant services. [*Id.* at ¶ 33].[1] Taco Mamacita has used the TACO MAMACITA® Mark in connection with its restaurant business for over a decade. [*Id.* at ¶ 34]. It expends substantial funds each year advertising its restaurant services using the Mark, including over the internet on http://tacomamacita.com and social media. [*Id.*].

In 2018, Plaintiffs allege they became aware of the "Taco Mama, A Taco Bar" restaurants operating in Alabama and North Carolina, with a planned location in Nashville, Tennessee. [*Id.* at ¶ 35]. Plaintiffs sent an objection letter, requesting Defendants select a different name for its Nashville restaurant that would not include the words "Taco Mama." [*Id.* at ¶ 36]. In March 2018, Wilco and TMHV opened "Taco Mama, A Taco Bar" in Nashville. [*Id.* at 37].

The Complaint alleges, upon information and belief, that Defendants are affiliated with one another and "are subject to common ownership and control of Wilco." [*Id.* at ¶ 39]. According to Plaintiffs, Defendants jointly advertise and market their restaurant services for "Taco Mama, A

---

[1] In their brief opposing the motion to dismiss, Plaintiffs state that Taco Mamacita, LLC, licenses the use of the TACO MAMACITA® Mark to Taco Mamacita Nashville, LLC. [Doc. 50 at 2]. This allegation does not appear in the Complaint.

Taco Bar" over the internet through the website www.tacomamaonline.com. [*Id.* at ¶ 40]. Plaintiffs allege Wilco is the registrant for this domain name. [*Id.*]. In addition, Plaintiffs allege that "Defendants" operate Twitter, Facebook, and Instagram pages to advertise, promote, and market their restaurants. [*Id.* at ¶¶ 41-43]. Plaintiffs allege that Defendants have not obtained a federal trademark registration for "Taco Mama, A Taco Bar." [*Id.* at ¶ 44].

Plaintiffs allege that Defendants' restaurants have similar menu offerings and prices as Plaintiffs' restaurants in Chattanooga and Nashville. [*Id.* at 45]. They further allege that Defendants' restaurant name is "confusingly similar" to the TACO MAMACITA® Mark "because the name incorporates the TACO MAMACITA® Mark in its entirety and merely uses an English translation of Mamacita." [*Id.* at 46]. They allege a strong likelihood of confusion, and that confusion has in fact resulted. [*Id.* at ¶ 47]. Specifically, they allege that Defendant TMHV's Nashville restaurant was opened less than a mile from Taco Mamacita's former restaurant, and there have been instances in which the parties' deliveries have been switched, or members of the public have commented on social media about the similarity between the names. [*Id.* at 47].

Since Plaintiffs' discovery of the allegedly unlawful use of the TACO MAMACITA® Mark in February 2018, the parties have been engaged in discussions and negotiation. [*Id.* at ¶ 49]. The parties have entered into a tolling agreement and numerous extensions. [*Id.*]. In addition, the parties have been engaged in an opposition proceeding pending before the Trademark Trial and Appeal Board ("TTAB"). [*Id.* at 50]. That proceeding arises from Wilco's attempt to register a mark that Plaintiffs contend infringes on the TACO MAMACITA® Mark. [*Id.*].

Plaintiffs filed their Complaint [Doc. 1] on March 24, 2021, alleging federal trademark infringement under 15 U.S.C. § 1114(1) (Count I), federal unfair competition under 15 U.S.C. § 1125(a) (Count II), violation of the federal Anticybersquatting Consumer Protection Act under

15 U.S.C. § 1125(d) (Count III), and common law unfair competition (Count IV). Plaintiffs seek damages, attorneys fees, a stay of the TTAB proceeding, preliminary and permanent injunctive relief, and prejudgment interest. [*Id.* at pg. 20-21].

On May 28, 2021, Defendants filed a Motion to Dismiss for Lack of Jurisdiction Under Rule 12(b)(2) and Improper Venue Under Rule 12(b)(3), or Alternatively, to Transfer Venue [Doc. 42], to which Plaintiffs responded in opposition [Doc. 50]. Defendants also filed a Motion to Stay Case Pending Proceedings at the Trademark Trial and Appeal Board [Doc. 45], to which Plaintiffs responded in opposition [Doc. 51]. Because "[p]ersonal jurisdiction over a defendant is a threshold issue that must be present to support any subsequent order of the district court," *Citizen Bank v. Parnes*, 376 F. App'x 496, 501 (6th Cir. 2010), the Court addresses the issue of personal jurisdiction first.

## II.     MOTION TO DISMISS – PERSONAL JURISDICTION

### A.  Personal Jurisdiction – Standard of Review

Plaintiffs bear the burden of demonstrating personal jurisdiction over each Defendant. *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996). As the United States Court of Appeals for the Sixth Circuit has explained:

> Motions to dismiss under Rule 12(b)(2) involve burden shifting. The plaintiff must first make a prima facie case, which can be done merely through the complaint. The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence. Once the defendant has met the burden, it returns to the plaintiff, who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.

*Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (internal citation and punctuation omitted); *see Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) (faced with a properly-supported motion for dismissal, a plaintiff may not stand on its pleadings, "but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction").

A district court has discretion in how it chooses to resolve a Rule 12(b)(2) motion. *Malone*, 965 F.3d at 505. If the motion can be ruled on before trial, the court may (1) determine the motion based on affidavits alone; (2) permit discovery in aid of the motion; or (3) conduct an evidentiary hearing on the merits of the motion. *Id.* If the court decides the motion "solely on written submissions and affidavits . . . the burden on the plaintiff is relatively slight, and the plaintiff must make only a prima facie showing . . . in order to defeat dismissal." *Air Prods. and Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 552 (6th Cir. 2007). In that context, the court reviews the pleadings and other documentary evidence in the light most favorable to the plaintiff, without considering the defendant's controverting assertions. *Bridgeport Music, Inc. v. Still N The Water Publishing*, 327 F.3d 472, 478 (6th Cir. 2003). If the defendant submits affirmative evidence showing that the court lacks jurisdiction, the plaintiff must respond by showing, through affidavits or otherwise, specific facts that establish jurisdiction. *Parker v. Winwood*, 938 F.3d 833, 839 (6th Cir. 2019).

"Dismissal in this procedural posture is proper only if all the specific facts which the plaintiff . . . alleges collectively fail to state a prima facie case for jurisdiction." *Theunissen*, 935 F.2d at 1458. This rule prevents a defendant from defeating personal jurisdiction by simply filing an affidavit contradicting the jurisdictional allegations of the complaint. A defendant may, however, invoke the court's discretion to order a pretrial evidentiary hearing, just as a plaintiff may move for jurisdictional discovery. *See Malone*, 965 F.3d at 505-6 (district court erred by crediting defendant's controverting affidavit without first allowing any form of discovery).

### B. Positions of the Parties

Defendants do not challenge personal jurisdiction as to Taco Mama Hillsboro Village, LLC or Wilco Holdings, LLC. [Doc. 33 at pg. 3, n. 9]. They argue that all twenty-three of the remaining

Defendants are Alabama limited liability companies having their principal place of business in Alabama, with no contacts in Tennessee. [Doc. 44 at pg. 3]. These Defendants include the "Non-Tennessee Restaurants"[2] and the "Non-Operating Entities."[3] Defendants submit an affidavit related to each of the 25 Defendant entities. [Docs. 43-1 to 43-25]. Defendants argue that the Court lacks general jurisdiction over the Non-Tennessee Restaurants and Non-Operating Entities because none are "at home" in Tennessee. [Doc. 44 at 12]. Next, Defendants argue that the Court lacks personal jurisdiction over the Non-Tennessee Restaurants and Non-Operating Entities because they have not purposefully availed themselves of the privilege of acting or causing a consequence in Tennessee.

Plaintiffs make several arguments in opposition to the motion. First, they contend Defendants waived their personal jurisdiction defenses through counsels' entries of general appearance. [Doc. 50 8-9]. Next, they contend that all other Defendants operate as alter egos of

---

[2] The Non-Tennessee Restaurants include the following twenty Defendants:
1. Taco Mama 119, LLC
2. Taco Mama Alabaster, LLC
3. Taco Mama Auburn, LLC
4. Taco Mama Baldwin, LLC
5. Taco Mama Burke Mill Village, LLC
6. Taco Mama Central City, LLC
7. Taco Mama Clift Farm, LLC
8. Taco Mama Dilworth, LLC
9. Taco Mama Edgewood, LLC
10. Taco Mama Florence, LLC
11. Taco Mama Hoover, LLC
12. Taco Mama Huntsville, LLC
13. Taco Mama Jones Valley, LLC
14. Taco Mama Lawnsdale, LLC
15. Taco Mama Montgomery, LLC
16. Taco Mama Providence, LLC
17. Taco Mama Summit, LLC
18. Taco Mama Trussville, LLC
19. Taco Mama Tuscaloosa, LLC
20. Wilco Hospitality, LLC

[3] The Non-Operating Entities including the following three Defendants:
1. Haver & Co., LLC
2. Taco Mama Transportation, LLC
3. Wilco Services Group, LLC

Wilco. [*Id.* at 14-16]. Third, Plaintiffs argue that Defendants purposefully availed themselves of the privilege of conducting business in Tennessee through their Nashville restaurant, website, and social media accounts, as well as by offering gift cards for sale on the website, and that Plaintiffs' claims arise out of these contacts. [*Id.* at 16-20]. Plaintiffs do not contend that general personal jurisdiction is proper as to any of the Defendants, so the Court focuses on specific jurisdiction.

### C. Personal Jurisdiction – Waiver

Plaintiffs rely on *Gerber v. Riordan*, 649 F.3d 514, 520 (6th Cir. 2011) for the proposition that filing a general appearance with the district court constitutes voluntary acceptance of the court's jurisdiction, and therefore, waiver of a defendant's personal jurisdiction defense. [Doc. 50 at 8-9]. Defendants maintain that *Gerber* is distinguishable and not controlling, as it conflicts with prior controlling precedent. [Doc. 53 4-7]. The Court agrees.

In *Gerber*, counsel for defendants had entered a general appearance on their behalf, moved to stay the litigation pending arbitration, moved to vacate a default judgment that was entered against the defendants, and responded in opposition to plaintiff's motion for mediation. *Gerber*, 649 F. 3d at 516. The parties had appeared at a case management conference and consented to the jurisdiction of the magistrate judge. *Id.* Defendants also moved for an extension of time to file Rule 26 discovery responses, withdrew that motion, and submitted responses. *Id.* Counsel subsequently attended a pretrial conference in person. *Id.* Three years after counsel entered an appearance, defendants moved to dismiss for lack of jurisdiction. *Id.*

The *Gerber* court first recognized that a defendant can waive a potential personal jurisdiction defense either explicitly or implicitly, by actions that "amount to a legal submission to the jurisdiction of the court." *Id.* at 518 (quoting *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 889, 905 (6th Cir. 2006)). The court then listed nine ways the defendants had "participated in the

7

litigation of this case." *Id.* at 518-19. It explained that "[o]nly those submissions, appearances and filings that give Plaintiff a reasonable expectation that Defendants will defend the suit on the merits or must cause the court to go to some effort that would be wasted if personal jurisdiction is later found lacking result in waiver of a personal jurisdiction defense." *Id.* (cleaned up). Based on the "dearth" of case law on the issue, the court took the opportunity to explain why two of those actions were insufficient to waive the personal jurisdiction defense. *Id.* at 519.

Without discussing the defendants' remaining litigation activities, the court concluded that "it is clear that Defendants' filing of a general appearance with the district court constituted a voluntary acceptance of the district court's jurisdiction, and therefore, a waiver of Defendants' personal jurisdiction defense." *Id.* It explained: "We have held that 'Under Federal Rule of Civil Procedure 12(h), a party waives the right to contest personal jurisdiction by failing to raise the issue when making a responsive pleading or a general appearance.'" *Id.* at 520 (citing *Reynolds v. Int'l Amateur Athletic Fed'n*, 23 F.3d 1110, 1121 (6th Cir. 1994)). The court also cited a decision of the United States Court of Appeals for the Eleventh Circuit, but that Circuit has since declined to follow *Gerber*.[4]

While the language of *Gerber* is quite broad, the opinion stops short of announcing a bright line rule. The decision expressly relies only on the notice of appearance in finding waiver, but goes to the trouble of listing eight other ways the defendants participated in litigation, disregarding only two as possible sources of waiver. Indeed, several cases since *Gerber* have suggested it is inconsistent with prior published decisions of the Sixth Circuit, while others have straightforwardly applied it to exercise personal jurisdiction when a general appearance is filed by counsel for defendants.

---

[4] *See Puyeh v. Public Health Trust of Jackson Health Sys.*, 718 F. App'x 786, 791 (11th Cir. 2017) (noting that subsequent decisions of the Sixth Circuit have suggested *Gerber* is inconsistent with prior precedent).

8

In *King v. Taylor*, 694 F.3d 650, 659 (6th Cir. 2012), the Sixth Circuit found that the defendant had waived his personal jurisdiction defense by extensively participating in the litigation. At issue in *King* was forfeiture of the defense of improper service. The court noted that while questions of personal jurisdiction and service of process are interrelated, it is "relatively easier" to find forfeiture of a service defense. *Id.* The court relied on *Gerber* to find that the defendant's voluntary, active, and extensive participation gave plaintiffs a reasonable expectation that defendant would defend the case on the merits. *Id.* at 660. The court noted, however, that counsel's written appearance a month before moving for dismissal based on lack of service did not constitute forfeiture. *Id.* at 660 n.7. The court cited *Friedman v. Estate of Presser*, 929 F.2d 1151, 1157, n. 7 (6th Cir. 1991), stating that "[i]nsofar as some of our recent cases might suggest otherwise, *see e.g., Gerber*, 649 F.3d at 520, they must yield to *Friedman*." *Id.* In *Friedman*, the court held that counsel's notice of appearance, filed after properly raising lack of proper service, did not waive the defense. *Friedman*, 929 F.2d at 1157.

Several months later, the Sixth Circuit issued an unpublished panel decision, directly applying *Gerber*. *See M & C Corp. v. Erwin Behr GmbH & Co., KG*, 508 F. App'x 498, 501 (6th Cir. 2012). The *M & C Corporation* court interpreted *Gerber* as "a case requiring courts in the Sixth Circuit to exercise personal jurisdiction whenever a defendant's attorney enters a general appearance." *Id.* While the court noted some factual distinctions, it determined that *Gerber* was "directly on point" and that a panel of the Sixth Circuit cannot overrule the decision of another panel. As she had in *Gerber*, Judge Karen Nelson Moore wrote a concurring opinion, agreeing that defendants had waived a personal jurisdiction defense, but arguing that *Gerber* was "wrongly decided." *Id.* at 504 (Moore, J. concurring). Judge Moore also maintained that *Gerber* was not controlling, because *Friedman* was the earlier-decided of the two conflicting published panel

decisions. *Id.* ("We should follow the pre-*Gerber* authority, because the earlier of two conflicting published panel decisions is controlling.").

Subsequent Sixth Circuit cases have declined to treat *Gerber* as a bright line rule. In *Boulger v. Woods*, 917 F.3d 471 (6th Cir. 2019), the court set out *Gerber*'s key holdings, but added that "[d]etermining what constitutes waiver by conduct is more an art than a science . . . and there is no bright line rule." *Id.* at 477 (quoting *State Auto Ins. Co. v. Thomas Landscaping & Constr., Inc.*, 2011 WL 3475376, at *6 (S.D. Ohio Aug. 6, 2011)). Rather, the court "must consider all of the relevant circumstances in determining whether waiver by conduct has occurred." *Id.* (citing *King*, 694 F.3d at 659). In *Boulger*, the defendant had waived personal jurisdiction by filing a motion for judgment on the pleadings, clearly asking the court for a decision on the merits. *Id.*

The Sixth Circuit recently addressed these discrepancies head-on in *Blessing v. Chandrasekhar*, 988 F.3d 889, 894 (6th Cir. 2021), finding that a defendant did not waive her personal jurisdiction defense when her lawyer filed a notice of appearance of counsel two weeks before moving to dismiss. As here, the plaintiff argued that *Gerber* required a finding of waiver, while defendant argued that *Gerber* was either distinguishable or conflicted with earlier controlling precedent. The Sixth Circuit noted the confusion *Gerber* had generated at the district court level:

> While some district courts have concluded that *Gerber* established a bright line rule that filing a notice of appearance effects a waiver of personal jurisdiction, others have confined *Gerber* to its facts to hold that a notice of appearance alone does not constitute waiver. We take this opportunity to clarify *Gerber* and its progeny. Filing a notice of appearance does not, on its own, cause a defendant to waive her personal jurisdiction defense.

*Id.* at 894. The court explained that "[a]lthough the *Gerber* court chronicled three years of defendants' litigation conduct, it ultimately decided that the defendants had waived the personal jurisdiction defense when counsel first filed the notice of appearance." *Id.* at 895. The *Blessing* court opined that *Gerber* "did not apply the test it had just delineated, failing to explain how a

10

notice of appearance gave the plaintiffs a reasonable expectation of the defendants' intention to defend the suit on the merits, or caused the district court to go to some wasted effort." *Id. Blessing* reiterates that the court must consider all of the relevant circumstances in determining whether the defense is forfeited.

Summarizing the cases discussed above, the court observed that "*Gerber, King, M & C Corp.* and *Boulger* have failed to give adequate guidance to district courts over whether a notice of appearance causes a waiver or forfeiture of a personal jurisdiction defense." *Id.* at 896. The court concluded that it "read *Gerber* in context as relying on the defendants' extensive participation in litigation, not as establishing a rule that filing a notice of appearance automatically waives the personal jurisdiction defense." *Id.* "To the extent that *Gerber* can be read as creating such a rule, that rule is inconsistent with earlier circuit precedent and thus not binding." *Id.* The Sixth Circuit went on to explain how a bright line rule would requiring overruling prior published decisions, including *Friedman*, "which the *Gerber* panel neither did nor had the power to do." *Id.*

*Blessing v. Chandrasekhar* speaks directly to the interpretive and precedential issues presented by the parties. It thoroughly explains why *Gerber* should be read in context and how any alleged bright line rule is foreclosed by prior controlling authority. If a notice of appearance does not waive a service of process defense, *see Friedman*, 929 F.2d at 1157, it stands to reason that it does not waive a personal jurisdiction defense, since, as between the two, "it is relatively easier to find forfeiture of a service defense." *King*, 694 F.3d at 659. After considering all the relevant circumstances, the Court finds that counsel's general notice of appearance and *pro hac vice* motions did not give Plaintiffs a reasonable expectation that Defendants intended to defend the suit on the merits. Nor did these filings cause the court to go to some effort that would be wasted if personal jurisdiction were found lacking. Consistent with Sixth Circuit authority, the Court finds

11

that the Non-Tennessee Restaurants and Non-Operating Entities have not waived their personal jurisdiction defenses.

### D. Personal Jurisdiction – Minimum Contacts

Plaintiffs did not file any declarations or other evidence, so the Court restricts its review to the allegations of the Complaint, construed in the light most favorable to Plaintiffs. "Specific jurisdiction turns on the 'affiliation between the forum and the underlying controversy.'" *Parker*, 938 F.3d at 839 (*quoting Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Three criteria are evaluated in determining whether personal jurisdiction exists:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Mach. Co. v. Mohasco Inds., Inc.*, 401 F.2d 374 (6th Cir. 1968). When a federal court's subject matter jurisdiction stems from a federal question, "personal jurisdiction over a defendant exists if the defendant is amenable to service of process under the forum state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process." *Bridgeport*, 327 F.3d at 477 (quoting *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002)) (cleaned up). Because Tennessee's long-arm statute is coterminous with the limits on personal jurisdiction imposed by the due process clause, the Court need only consider whether exercising personal jurisdiction over Defendants comports with federal due process. *See id.* (applying federal due process framework to federal claims brought in Tennessee).

"[I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Int'l Tech. Consultants, Inc. v. Euroglas, S.A.*, 107 F.3d 386,

12

395-96 (6th Cir. 1997) (*quoting Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). "Thus where the defendant 'deliberately' has engaged in significant activities within a State . . . or has created 'continuing obligations' between himself and residents of the forum . . . he manifestly has availed himself of the privilege of conducting business there, and because his activities are shielded by 'the benefits and protections' of the forum's laws it is presumptively not unreasonable to require him to submit to the burdens of litigation in that forum as well." *Burger King*, 471 U.S. at 475–76.

## 1. Purposeful Availment

Plaintiffs argue that the purposeful availment factor is met because (i) Defendants are Wilco's alter egos and (ii) Defendants have purposefully availed themselves of the privilege of conducting business in Tennessee through their Tennessee restaurant, website, and social media accounts. [Doc. 50 at 16-20]. Defendants contend that the allegations of Plaintiffs' Complaint are insufficient to infer that the remaining Defendants are alter egos of Wilco. [Doc. 53 at 14-15]. They argue that when analyzed separately, no Defendant other than TMHV or Wilco has purposefully availed itself of the privilege of acting or causing a consequence in Tennessee, such that the exercise of personal jurisdiction would not offend due process. [*Id.* at 10-14]. The Court agrees that Plaintiffs have not adequately alleged an alter ego relationship between Wilco and the remaining Defendants, or adequately alleged purposeful availment.

### a. Alter Ego

First, Plaintiffs say they have alleged that all remaining Defendants are alter egos of Wilco. The Complaint does not assert that any Defendant is an alter ego of another. Rather, Plaintiffs rely on the following allegation:

> While Defendants operate their restaurants out of various limited liability companies, upon information and information [sic], Defendants are affiliated one with the other, and are subject to common ownership and control of Wilco.

13

[Doc. 1 at ¶ 39]. In addition, Plaintiffs allege that Defendants "jointly advertise and market their restaurant services" on www.tacomamaonline.com, which, upon information and belief, is a domain name registered to Wilco. [*Id.* at 40]. They allege that "Defendants" operate various Facebook pages, listing 24 different Facebook pages that appear to be for different restaurant locations, *e.g.*, www.facebook.com/tacomamamidtownmobile. [*Id.* at ¶ 41]. They further allege that "Defendants" operate the Twitter page https://twitter.com/EatAtMama and Instagram page https://www.instagram.com/eatattacomama, each of which "advertises, promotes, and markets its 'Taco Mama, A Taco Bar' restaurants and products sold in the restaurants." [*Id.* at ¶¶ 42-43]. Plaintiffs also argue that "[e]ach entity unquestionably utilizes the same name, menu offerings, trade dress, and offending mark," [Doc. 50 at 15], but this is not fully alleged in the Complaint. Similarly, they reason that "Wilco is the sole owner of its mark in question," so "it must have some relationship or agreement" with the remaining Defendants to allow them to use the mark. [*Id.* at 15]. Finally, they note that Defendants are all represented by the same attorneys. [*Id.* at 16]. Defendants contend the arguments of counsel should be disregarded where unsupported by allegations or evidence, and that the allegations of the Complaint are insufficient to show an alter ego relationship.

The parties appear to disagree somewhat on whether Tennessee law or federal common law applies to the alter ego question. [*See* Doc. 50 at 14; Doc. 53 at 15, n. 63].[5] As multiple courts have recognized, "Sixth Circuit precedent is not entirely clear regarding how to apply the alter-ego theory of personal jurisdiction to federal claims." *See Anwar v. Dow Chem. Co.*, 876 F.3d 841, 848 n. 2 (6th Cir. 2017); *Tailgate Beer, LLC v. Blvd. Brewing Co.*, 2019 WL 2366948 (M.D. Tenn.

---

[5] Defendants say they are not convinced Tennessee law applies, but believe there is not a meaningful difference between federal common law and Tennessee law with respect to alter ego for the purposes of jurisdiction. [Doc. 53 at pg. 15-16, n. 63]. Like Plaintiffs, they analyze the issue under Tennessee law. [*Id.*].

14

June 5, 2019). Under either Tennessee law or federal common law, however, Plaintiffs' alter ego allegations are insufficient.

The Sixth Circuit has held that "[t]he alter-ego theory provides for personal jurisdiction 'if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for the purposes of jurisdiction.'" *Anwar*, 876 F.3d at 848 (cleaned up) (quoting *Indah v. U.S. S.E.C.*, 661 F.3d 914, 921 (6th Cir. 2011)). To satisfy the alter ego test, the plaintiff "must demonstrate 'unity of interest and ownership' that goes beyond mere ownership and shared management personnel." *Id.* at 849 (quoting *Ranza v. Nike*, 793 F.3d 1059, 1073 (9th Cir. 2015)).

The Sixth Circuit appears to consider several factors in determining whether a subsidiary is merely an alter ego of the parent company, including: (1) sharing the same employees and corporate officers; (2) engaging in the same business enterprise; (3) having the same address and phone lines; (4) using the same assets; (5) completing the same jobs; (6) not maintaining separate books, tax returns, and financial statements; and (7) exerting control over the daily affairs of another corporation. *Id.* at 849; *see Dochnal v. Thomson Reuters Corp.*, 2018 WL 5045205 (E.D. Tenn. Oct. 17, 2018) (finding plaintiff failed to allege any of the seven factors set forth in *Anwar*).

Similarly, Tennessee courts recognize a presumption of corporate separateness. *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 651 (Tenn. 2009) ("Parent and subsidiary corporations are presumed to be separate and distinct legal entities."). In Tennessee "mere control of a subsidiary corporation by its parent is not sufficient to disregard the presumption of corporate separateness." *Id.* at 653. Rather, a party seeking to disregard corporate separateness must demonstrate that (1) the subsidiary corporation is a sham or dummy, (2) the two corporations are in fact identical and indistinguishable, or (3) that the subsidiary corporation is a mere

15

instrumentality, agent, conduit, or adjunct of the parent corporation. *Id.* As Plaintiffs recognize, see Doc. 50 at 15, the presumption of corporate separateness may be overcome where the parent company "exercises complete dominion over its subsidiary, not only of finances, but of policy and business practice in respect to the transaction under attack, so that the corporate entity, as to that transaction, had no separate mind, will or existence of its own." *Id.*

Drawing inferences in Plaintiffs' favor, the Complaint fails to demonstrate that the other Defendants are alter egos of Wilco. There is no indication that Wilco exercises "complete dominion over the other entities' policies and business practices." [Doc. 50 at 15]. The only factor in the Sixth Circuit's *Anwar* test that Plaintiffs have arguably addressed is whether Defendants are engaged in the same business enterprise.[6] The Complaint alleges that Defendants are affiliated and subject to common ownership and control of Wilco. [Doc. 1 at ¶ 39]. It further alleges Wilco is the registrant for www.tacomamaonline.com. [*Id.* at ¶ 40]. According to Plaintiffs, Defendants "jointly advertise and market their restaurant services" on that website. [*Id.*]. There are no allegations as to which entities maintains the various social media accounts. In addition, the Complaint alleges that while some Defendants share an address and registered agent with Wilco, many have separate addresses for their principal place of business and different registered agents. [*See, e.g.,* Doc. 1 at ¶¶ 6, 7, 10, 14-16, 18- 21]. Even assuming Wilco operates each social media account as well as www.tacomamaonline.com, that would not be enough to show "complete dominion" over the policies and practices of the remaining Defendants, or that Wilco controls their daily affairs.

---

[6] As Defendants point out, several of Plaintiffs' arguments are just that – arguments of counsel, not allegations in the pleadings. Plaintiffs claim, for example, that it is "undisputed that each entity's restaurant is advertised on www.tacomamaonline.com," but there is no allegation in the Complaint to this effect. [Doc. 50 at 15]. Similarly, there is no allegation that "[e]ach entity is also present on the parent's social media platforms." [*Id.* at 15]. Finally, the assumption that Wilco "must have some relationship or agreement" with the remaining Defendants to allow them to use the mark is neither an allegation nor evidence. [*Id.*].

### b. *Purposeful Availment as to Each Defendant*

Plaintiffs' purposeful availment arguments treat Defendants collectively, not as individual corporate entities. But because Plaintiffs have not adequately alleged an alter ego relationship, Wilco and/or TMHV's actions do little to demonstrate that each remaining Defendant purposefully availed itself of the privilege of acting in Tennessee. Plaintiffs allege that "Defendants" have purposefully availed themselves of the privilege of conducting business in Tennessee through their Tennessee restaurant, website, and social media accounts.

To carry their burden, Plaintiffs must establish "with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Children's Legal Servs., PLLC v. Shor Levin & Derita*, PC, 850 F. Supp. 2d 673, 679 (E.D. Mich. 2012) (quoting *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002)). As to the restaurant in Nashville, the Complaint alleges that "Wilco and Defendant TMH" opened a Taco Mama, A Taco Bar restaurant in Nashville, Tennessee.[7] Nothing in the Complaint indicates the involvement of any other Defendants in this venture. And minimum contacts "must arise out of contacts that the defendant *himself* creates with the forum State." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). Yet Plaintiffs make no allegations specific to any individual Defendant's contacts with Tennessee, save Wilco and TMHV.

Next, Plaintiffs contend that purposeful availment may be found based on the www.tacomamaonline.com website and the marketing and sale of gift cards on the website. [Doc. 50 at 17]. "A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with

---

[7] Taco Mama Hillsboro Village, LLC is abbreviated to "TMHV" in the Complaint, but Plaintiffs' use of "TMH" here clearly refers to the same entity, as it is named in the objection letter discussed in the preceding paragraph. [*See* Doc. 1 at ¶¶ 36-37; Doc. 1-3].

17

residents of the state." *Neogen Corp.*, 282 F.3d at 890; *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (explaining the "sliding scale" of website interactivity in relation to personal jurisdiction principles). Interactive websites can subject a defendant to specific personal jurisdiction, while passive websites are much less likely to confer jurisdiction. *Zippo*, 952 F. Supp. at 1124. "At one end of the spectrum are situations where a defendant clearly does business over the Internet . . . At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions." *Id.*

Plaintiffs allege that while Wilco is the registrant for the www.tacomamaonline.com website, Defendants "jointly" market and advertise on the website. Regardless of interactivity level, Plaintiffs cite no authority for the proposition that one company's ownership of a website makes jurisdiction proper as to its affiliates, whose goods or services are also advertised on the website. The Complaint alleges that the domain name "is used by each Defendant as Wilco's licensee," [Doc. 1 at ¶ 69], and that Defendants "jointly advertise and market" their goods and services on the website [*Id.* at ¶ 40]. The Complaint makes no allegation as to the ownership or control of any of the social media accounts.

Initially, the allegation that each Defendant is Wilco's licensee as to the domain name is a broad legal allegation that is not accompanied by supporting factual allegations. Assuming, arguendo, that other Defendants operate the website, the Court would nonetheless find it is only somewhat interactive based on the existing allegations. Plaintiffs do not allege or provide any evidence that the website facilitates job applications and catering orders. And "[a]rguments in parties' briefs are not evidence." *Duha v. Agrium, Inc.*, 448 F.3d 867, 879 (6th Cir. 2006). Advertising and marketing generally fall into the category of passively posted information. For

example, in *Neogen Corp.*, the Sixth Circuit found that defendant's website consisted of "primarily passively posted information," advertising defendant's services and providing basic contact information. 282 F.3d at 890. While the court ultimately found personal jurisdiction, it did so due to the more interactive aspects of the website, which included the sale of services and creation of passwords to access test results online. So, even assuming Defendants "jointly" advertise and market their goods and services on the website, under *Neogen*, this is passively posted information.

Under *Neogen*, the only interactive element to the website is the sale of gift cards to consumers in this Judicial District. There is no allegation that any specific Defendant makes these sales or profits from them, other than possibly Wilco. Based on the allegations of the Complaint, the Court finds that the www.tacomamaonline.com website is only minimally interactive, consisting primarily of passively posted information. Accordingly, Plaintiffs have not alleged facts sufficient for the Court to find that, as to each Defendant, its "contacts with the forum state proximately result from actions by the defendant himself that create a substantial connection with the forum." *Means v. United States Conf. of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016); *cf. Bailey v. Turbine Design, Inc.*, 86 F. Supp. 2d 790, 794 (W.D. Tenn. 2000) ("While a general posting on the Internet is not sufficient to establish minimum contacts, courts may find personal jurisdiction appropriate when there is 'something more' to indicate that the defendant purposefully directed his activities into the forum state.").

*Tailgate Beer, LLC v. Boulevard Brewing Co.*, 2019 WL 2366948 (M.D. Tenn. June 5, 2019), is not to the contrary. There, the website was deemed highly interactive, as customers could purchase various items on the online gift shop and Tennessee residents had in fact purchased these items. *Id.* at *4. Moreover, the products sold on the website included the allegedly infringing image that was the subject of that action. *Id.* at *5. As discussed below, while Plaintiffs *argue* that the

19

gift cards in question contain the allegedly infringing mark, the Complaint does not make this allegation and they present no evidence to support it. The sale of gift cards on a website for restaurants that are, with one exception, located outside of Tennessee is the sort of "random, fortuitous, or attenuated contact[]" with Tennessee that is insufficient to support personal jurisdiction. *See Neogen*, 282 F.2d at 891-92 (quoting *Burger King*, 471 U.S. at 475).

### 2. Claims Arising from Contacts

Because Plaintiffs have not alleged sufficient facts to support a finding of purposeful availment, the Court need not address whether their claims against Defendants arise from these contacts. In the alternative, the Court finds that, as to all Defendants other than Wilco and TMHV, Plaintiffs' claims for federal trademark infringement, federal unfair competition, violation of the Anticybersquatting Consumer Protection Act, and common law unfair competition do not arise out of the contacts of each Defendant with Tennessee. To make a contrary argument, Plaintiffs must again attribute the contacts of Wilco and TMHV to the remaining Defendants. Yet the law is very clear that "it is plaintiffs' burden to establish personal jurisdiction as to each defendant." *Beydoun v. Wataniya Restaurant Holding, Q.S.C.*, 768 F.3d 499, 505 (6th Cir. 2014) (plaintiffs failed to meet their burden to establish jurisdiction by failing to "address all defendants separately" as to minimum contacts); *Hosp. Auth. of Metro. Gov't of Nashville v. Momenta Pharms., Inc.*, 353 F. Supp. 3d 678 (M.D. Tenn. 2018) ("The court must have personal jurisdiction over each defendant and as to each asserted claim."); *Bd. of Forensic Document Examiners, Inc. v. Am. Bar Assoc.*, 2017 WL 549031 (W.D. Tenn. Feb. 9, 2017) (same).

To satisfy the "arising from" prong of the *Mohasco* test, "the plaintiff must demonstrate a causal nexus between the defendant's contacts with the forum state and the plaintiff's alleged cause of action." *Beydoun*, 768 F.3d at 506-7. This factor "does not require that the cause of action

20

formally 'arise from' defendant's contacts with the forum; rather, it requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities.'" *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002) (quoting *Third Nat'l Bank in Nashville v. WEDGE Grp., Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989)).

Plaintiffs argue that their claims arise from Defendants' opening a restaurant in Tennessee bearing the offending mark, the sale of goods under that mark, and the sale of gift cards bearing the infringing mark. [Doc. 50 at 19-20]. First, Plaintiffs' assertion that Defendants' website "sells gift cards bearing the infringing mark" lacks evidentiary support and is not alleged in the Complaint. [*Id.* at 19]. They cite Defendants' brief in support of their motion to dismiss, but this is not evidence, and the cited portion makes no such claim. In any event, the Court's inquiry is limited to Plaintiffs' allegations.

While the Court draws inferences in Plaintiffs' favor, it cannot assume facts that have not been alleged. The Complaint does not allege that any Defendant other than Wilco owns the website or makes gift card sales on the website. As to the Nashville restaurant, there is no allegation that any Defendant other than Wilco and TMHV own, operate, control, or profit from that venture. Accordingly, Plaintiffs' claims against Defendants other than Wilco and TMHV do not arise from the contacts of those specific Defendants with Tennessee. Defendants' Motion to Dismiss for Lack of Jurisdiction [Doc. 42] will therefore be **GRANTED** as to all Defendants other than Wilco and TMHV.

## III. MOTION TO DISMISS FOR IMPROPER VENUE

While Defendants Wilco and TMHV concede personal jurisdiction, they challenge venue. [Doc. 53 at 1]. So, while twenty-three of the Defendants will be dismissed due to lack of personal

21

jurisdiction, the Court must also address whether venue is proper in this District as to Wilco and TMHV.

Defendants move for dismissal for improper venue under Federal Rule of Civil Procedure 12(b)(3), or in the alternative, to transfer venue to the Northern District of Alabama, Birmingham Division. [Doc. 42]. "[A] Rule 12(b)(3) motion to dismiss for improper venue is simply the procedural vehicle by which to challenge improper venue; the Rules of Civil Procedure do not contain any venue provisions or requirements." *Kerobo v. Southwestern Clean Fuels, Corp.*, 285 F.3d 531, 538 (6th Cir. 2002). Rather, the requirements for venue are set by statute, "as are the remedies available for improper and inconvenient venue." *Id.* Section 1406(a) permits the Court to dismiss, or if it be in the interest of justice, transfer a case which is filed in the wrong district to any district in which it could have been brought. 28 U.S.C. § 1406(a); *Martin v. Stokes*, 623 F.2d 469, 471 (6th Cir. 1980). If venue is improper, a district court can transfer an action even if it lacks personal jurisdiction over the defendant. *Goldlawr v. Heiman*, 369 U.S. 463, 466-67 (1962).

"There is a split of authority among district courts in the Sixth Circuit regarding who bears the burden of proof when venue is challenged as improper." *Olin-Marquez v. Arrow Senior Living Mgmt., LLC*, 586 F. Supp. 3d 759, 775 (S.D. Ohio 2022) (quoting *Reilly v. Meffe*, 6 F. Supp. 3d 760, 765 (S.D. Ohio 2014)). Regardless, a plaintiff's well-pleaded allegations pertaining to venue are taken as true, unless contradicted by a defendant's affidavits. *Id.* In resolving venue questions, courts may examine facts outside the complaint, but must draw all reasonable inferences and resolve factual conflicts in favor of the plaintiff. *Id.*

Pursuant to 28 U.S.C. § 1391(b), an action may be brought in:

1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of the property that is the subject of the action is situated; or

3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). An "entity," including a limited liability company, is deemed to reside "in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question." § 1391(c)(2).

Defendants claim that "Plaintiffs concede that none of Defendants reside in this Judicial District," citing paragraph 31 of the Complaint. [Doc. 44 at 18]. They therefore focus their briefing on § 1391(b)(2). Yet in the Complaint, Plaintiffs allege the following as to venue:

> Venue is proper in this Court pursuant to 28 U.S.C. § 1391(a)(2)–(3),[8] in that a substantial part of the events or omissions giving rise to the claims occurred, or a substantial part of the intellectual property that is the subject of this action is situated, in this judicial district, and Defendants are subject to personal jurisdiction in this judicial district.

[Doc. 1 at ¶ 31] (emphasis added). The Complaint clearly alleges that Defendants are subject to personal jurisdiction in this district. Just as clearly, § 1391(c)(2) provides that an entity is deemed to reside in a judicial district in which it is subject to personal jurisdiction.

Defendants do not otherwise address whether Wilco and TMHV reside in this District in their opening brief or Motion to Dismiss. Rather, they maintain that personal jurisdiction and venue cannot be proper in the trademark owner's home district on the theory that the trademark is property that exists in the owner's home base and is damaged there. [Doc. 44 at 18]. Defendants therefore conclude that the only way for venue to be proper in this District is if a substantial part of the events or omissions giving rise to the claim occurred here. [*Id.*]. They proceed to argue that venue in a Lanham Act case is proper where the "passing off" occurs, and that no passing off

---

[8] The reference to § 1391(a)(2)-(3) appears to be in error.

occurred in this District either through advertising, actual sales, the www.tacomamaonline.com website, or the sale of gift cards. While this analysis in some ways overlaps with the minimum contacts analysis, Defendants Wilco and TMHV do not expressly challenge personal jurisdiction in this District in the motion to dismiss or opening brief.

Quite the opposite – Wilco and TMHV repeatedly and unreservedly concede personal jurisdiction is proper in this Court. Defendants state: "TMHV and Wilco do not challenge this Court's personal jurisdiction over them . . . However, TMHV and Wilco join all Defendants in challenging venue in this Judicial District." [Doc. 44 at 3, n.9] (emphasis added); [Doc. 44 at 12, n. 51] ("TMHV and Wilco concede that personal jurisdiction is proper as to them, and thus, they do not join the 12(b)(2) portion of the motion."). They reiterate throughout the brief that "TMHV and Wilco . . . do not challenge jurisdiction." [Doc. 44 at 4, n. 13, n.16]. While both TMHV and Wilco challenge venue, they do not explain how they can be subject to personal jurisdiction in "this Court" without being deemed residents of this District.

In their response in opposition to the motion to dismiss for improper venue, Plaintiffs argue that by conceding personal jurisdiction, Defendants Wilco and TMHV have separately waived any venue objection. [Doc. 50 at 21]. In their reply brief, Defendants argue for the first time that Wilco and TMHV are "not contesting personal jurisdiction at the state level in Tennessee," [Doc. 53 at 11], but that "Plaintiffs have failed to plead allegations showing that personal jurisdiction is proper as to **each defendant in this Judicial District**." [Doc. 53 at 19] (emphasis original).

Initially, arguments raised for the first time in a reply brief are generally waived. *Sanborn v. Parker*, 629 F.3d 554, 579 (6th Cir. 2010) ("We have consistently held, however, that arguments made to us for the first time in a reply brief are waived."); *Palazzo v. Harvey*, 380 F. Supp.3d 723, 730 (M.D. Tenn. 2019) ("Generally speaking, arguments raised for the first time in reply briefs

24

are waived."). This general rule is not an empty technicality. Rather, it requires the movant to submit his arguments to the adversarial process, and allows the Court to determine issues with the benefit of both parties' positions. The importance of this principle is evident here, where virtually none of Defendants' opening arguments against personal jurisdiction relate to Wilco and TMHV.

More fundamentally, Rule 12(h)(1) provides that "[a] party waives any defense listed in Rule 12(b)(2)-(5) by . . . failing to either (i) make it by motion under this rule; or (ii) include it in a responsive pleading or in an amendment." Fed. R. Civ. P. 12(h)(1); *Innovation Ventures, LLC v. Custom Nutrition Lab'ys, LLC*, 912 F.3d 316, 333 (6th Cir. 2018) ("[I]f a defendant makes a motion under Rule 12(b)(2) to (5) but does not raise lack of personal jurisdiction, any objection is waived by operation of Rule 12(h)(1)."); *see Centerville ALF, Inc. v. Balanced Care Corp.*, 197 F. Supp. 2d 1039, 1047 (S.D. Ohio 2002) ("Challenges to personal jurisdiction and venue must be raised separately, and failure to raise challenges results in a waiver of the defenses.").

As many courts in the Sixth Circuit have held, a defendant can waive a venue challenge by failing to raise lack of personal jurisdiction in their responsive pleading. *Hamm v. Wyndham Resort Dev. Corp.*, 2020 WL 5995050 (M.D. Tenn. Oct. 9, 2020) ("[B]y failing to object to personal jurisdiction and thus consenting to this court's exercise of personal jurisdiction, [defendant] is deemed to 'reside' in this district for the purposes of § 1391(b)(1). As a result, venue in this district is proper under the statute.");[9] *Centerville ALF, Inc.*, 197 F. Supp. 2d at 1047 (corporate defendant conceded personal jurisdiction by failing to raise a 12(b)(2) defense and was deemed to reside in the district for venue purposes); *Johnson v. UMG Recordings, Inc. by MCA Records, Inc.*, 2018

---

[9] Defendants say the reasoning in *Hamm* was "premised on the prior dismissal of several other defendants." [Doc. 53 at 18]. This is not correct. To the contrary, the court reasoned that "even if personal jurisdiction was arguably appropriate as to some defendants or some claims, if either was lacking as to claims against it specifically, WVR was charged with raising a personal jurisdiction defense in the first Rule 12 motion or waiving the ability to do so." *Hamm*, 2020 WL 5995050 at *5.

WL 4111912 (M.D. Tenn. Aug. 29, 2018) (same); *Kendrick v. Amazon*, 2022 WL 4798188, *2-3 (W.D. Tenn. Oct. 3, 2022) (denying motion to dismiss for improper venue where defendants waived personal jurisdiction defense by failing to bring 12(b)(2) motion, making venue proper under § 1391(b)(1)); *see also Yonko v. W. Coast Life Ins. Co.*, 2021 WL 1428476 (W.D. KY. April 15, 2021) (personal jurisdiction challenge raised in defendant's reply in support of motion to transfer venue was waived).

The court's holding in *Johnson v. UMG Recordings, Inc. by MCA Records, Inc.*, is instructive because the allegations and arguments of the parties were similar. 2018 WL 4111912. In the Complaint, the plaintiff asserted that venue was proper in the Middle District of Tennessee under 28 U.S.C. § 1391(b)(2) and (b)(3) because a substantial part of the acts and omissions giving rise to plaintiff's claims occurred in that District. *Id.* at *4. In defendant's motion to transfer due to improper venue, defendant argued that venue was not proper under either of those provisions. *Id.* In his response, plaintiff abandoned his § 1391(b)(2) and (3) arguments, and instead relied on § 1391(b)(1), arguing that defendant was deemed to reside in the Middle District of Tennessee because it was subject to that court's personal jurisdiction. *Id.* In reply, defendant argued that it did not have sufficient contacts with the jurisdiction, so venue was not proper. *Id.*

The court first found that plaintiff had not pleaded that venue was proper under § 1391(b)(1) in the Complaint and thus the court *could* find that he had not carried his burden of establishing that venue existed. *Id.* On the other hand, the defendant failed to argue that it was not subject to the court's personal jurisdiction in its Rule 12 motion, "making that argument for the first time in its reply." *Id.* "Ultimately, [defendant's] failure to assert affirmatively that it is not subject to the court's personal jurisdiction is of greater significance." *Id.* The court noted the significant authority for the proposition "that challenges to personal jurisdiction and venue must

26

be raised separately in a defendant's first motion to dismiss, or else they are waived under Rule 12(h)." *Id.* (cleaned up). It explained that "[s]uch challenges must be made separately because they implicate different interests: personal jurisdiction involves due process limitations on a court's power to subject a defendant to its jurisdiction, while venue raises important, but less fundamental, questions of convenience and efficiency." *Id.* The court specifically noted that "an objection to personal jurisdiction raised in a reply brief is not the equivalent of a motion under Rule 12(b)(2)." *Id.*; *see also Summit Training Source, Inc. v. Mastery Techs., Inc.*, 2000 WL 35442327, *3 (W.D. Mich. June 1, 2000) (holding that defendant's objection to personal jurisdiction, raised for the first time in a reply in support of a motion to change venue, "was clearly an afterthought" and therefore waived); *Hamm*, 2020 WL 5995050 at *7 (defense of improper venue that was not available to defendant at the time of first pleading was still waived because defendant did not raise lack of personal jurisdiction).

In their memorandum in support of dismissal/transfer, "TMHV and Wilco concede that personal jurisdiction is proper as to them, and thus, they do not join the 12(b)(2) portion of the motion." [Doc. 44 at 12, n. 51]. Because Wilco and TMHV failed to separately challenge personal jurisdiction in this District in their Rule 12(b) motion, and because they raise arguments regarding personal jurisdiction for the first time in their reply brief, they have waived any challenge to personal jurisdiction in this Court.

Accordingly, the Court finds that venue is proper as to Wilco and TMHV. Because Wilco and TMHV are subject to personal jurisdiction in the Eastern District of Tennessee, they are deemed to reside in this District pursuant to § 1391(c)(2) for venue purposes. As both are residents of this judicial district, venue is proper under § 1391(b)(1). *See Hall v. Rag-O-Rama, LLC*, 359 F. Supp.3d 499, 513 (E.D. Ky. 2019) (because defendant was subject to personal jurisdiction in the

District, venue was proper); *Invisible Fence, Inc. v. Fido's Fences, Inc.*, 687 F. Supp. 2d 726, 739-40 (E.D. Tenn. 2009) (in trademark and unfair competition action, venue was proper because defendant was subject to personal jurisdiction in this District and was deemed to reside in this District); *Kmart Corp. v. Key Indus., Inc.*, 877 F. Supp. 1048, (E.D. Mich. 1994) (in declaratory judgment trademark action, venue was proper because court had personal jurisdiction over defendant); *CJ Advertising, LLC v. Whitehardt, Inc.*, 2010 WL 3260068, *7 (rejecting motion to dismiss for improper venue because "[t]he court's finding that there is personal jurisdiction over [defendant] due to its activities within the Middle District of Tennessee resolves the venue issue"). The Motion to Dismiss for Improper Venue Under Rule 12(b)(3) [Doc. 42] will therefore be **DENIED**.

## IV. MOTION TO TRANSFER

Defendants argue that even if venue is proper in this District, the case should be transferred to the Northern District of Alabama under § 1404(a) for the convenience of the parties and witnesses and because of the location of relevant documents and locus of operative facts. [Doc. 44 at 22-25]. Plaintiffs oppose, arguing that Defendants have not made a clear and convincing showing that the balance of factors strongly favors the alternative forum. [Doc. 50 at 23-24].

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). The party seeking transfer bears the burden of demonstrating that transfer is warranted. *Mayberry v. Nuclear Fuel Servs., Inc.*, No. 3:13-cv-499, 2013 WL 5560318 (E.D. Tenn. Oct. 7, 2013). "[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Id.* (quoting *Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984)); *see also West American Ins. Co. v. Potts*, 908 F.2d 974 (6th Cir. 1990)

(table) ("A motion for change of venue is properly granted when the balance weighs 'strongly in favor of transfer.'") (quoting *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir. 1951)). As the permissive language of the statute suggests, the Sixth Circuit has recognized that "district courts have 'broad discretion' to determine when party 'convenience' or 'the interest of justice' make a transfer appropriate." *Reese v. CNH America, LLC*, 574 F.3d 315, 320 (6th Cir. 2009). No one factor is dispositive. *Republic Steel v. Beemac, Inc.*, 2022 WL 2872295, *3 (N.D. Ohio July 21, 2022).

For a typical § 1404(a) motion, courts "must evaluate both the convenience of the parties and various public-interest considerations." *Atlantic Marine Const. Co., Inc. v. U.S. Dist. Court for the W. Dist. of Tex.*, 571 U.S. 49, 62 (2013). Factors relating to the parties' private interests include the relative ease of access to sources of proof, availability of compulsory process, the cost of obtaining attendance of willing witnesses, and other practical concerns that make trial "easy, expeditious and inexpensive." *Id.* at 62, n.6 (*quoting Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n. 6 (1981)). Public interest factors include "administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.*[10]

Defendants first argue that the case should be transferred because most of the parties and witnesses are located in or around the Northern District of Alabama. [Doc. 44 at 23-24]. As explained above, twenty-three of the Defendants will be dismissed, leaving only Wilco, TMHV,

---

[10] The test for change of venue under § 1404(a) has been articulated in many ways. Courts often consider the following factors:

> (1) convenience of witnesses; (2) availability of judicial process to compel the attendance of unwilling or uncooperative witnesses; (3) location of the relevant documents or records, and the relative ease of access to sources of proof; (4) residence and convenience of the parties; (5) relative financial means of the parties; (6) locus of the operative facts and events that gave rise to the dispute or lawsuit; (7) each forum's familiarity with the governing law; (8) the deference and weight accorded to the plaintiff's choice of forum; and (9) trial efficiency, fairness, and the interests of justice based on the totality of the circumstances.

*Ingrham v. Universal Indus. Gases, Inc.*, 2006 WL 306650, *5 (E.D. Tenn. Feb. 8, 2006). Regardless of the test applied, the Court has considered all factors identified by Defendants in reaching its decision.

29

and Plaintiffs. Defendants do not identify any witnesses in their motion, or explain why they would be inconvenienced by traveling to this District. *See iLight Techs., Inc. v. Marktech Int'l Corp.*, 2010 WL 1946950, *2 (M.D. Tenn. May 10, 2010) ("The party seeking transfer must clearly specify the key witnesses to be called and must make a general statement of what their testimony will cover." (citation omitted)). Defendants also do not allege that any witnesses would be unwilling to testify in the absence of compulsory process. *See Duha v. Agrium, Inc.*, 448 F.3d 867, 877 (6th Cir. 2006) ("[A]lthough the availability of compulsory process is properly considered when witnesses are unwilling, it is less weighty when it has not been alleged or shown that any witness would be unwilling to testify.").

As Plaintiffs point out, Plaintiff Taco Mamacita, LLC is headquartered in this District and its restaurant is located here. [Doc. 50 at 22]. And "[a] transfer of venue under 28 U.S.C. § 1404(a) must render the litigation more convenient as a whole; it cannot merely shift inconvenience between the parties." *McKee Foods Kingman v. Kellogg Co.*, 474 F. Supp. 2d 934, 936 (E.D. Tenn. 2006); *Van Dusen v. Barrack*, 376 U.S. 612, 645-46 (1964) ("Section 1404(a) provides for transfer to a more convenient forum, not to a forum likely to prove equally convenient or inconvenient.").

Next, Defendants argue that the locus of operative facts is in the Northern District of Alabama, and that "it is clear that the majority of relevant documents, sources of proof and operative facts relating to trademark infringement and unfair competition are likely located in or around the Northern District of Alabama." [Doc. 44 at 24]. Defendants have not presented any evidence to support this contention. Plaintiffs contend the proof is located in both Tennessee and Alabama. Neither party presents any evidence regarding the location of proof, but it is reasonable to assume that evidence will be located in both forums, as the parties are located in or near both forums. So, this factor does not weigh in favor of transfer.

Finally, Defendants contend that a plaintiff's choice of forum is "no longer" as dominant a factor in the transfer analysis and should be balanced alongside other factors. [Doc. 44 at 25].[11] Because none of the other factors weigh in favor of transfer, the Court need not decide how much deference should be accorded to Plaintiffs' choice of forum. The Court also observes that Chattanooga, Tennessee, is a drive of roughly 2.5 hours from Birmingham, Alabama. This relatively short distance makes it unlikely that litigating in this District will make the case more difficult or expensive, or delay its resolution. *See Ingrham v. Universal Indus. Gases, Inc.*, 2006 WL 306650, *5 (E.D. Tenn. Feb. 8, 2006) ("The Court considers all relevant factors that may make the litigation in this case easy, less expensive, and expeditious."). Accordingly, Defendants' Motion to Transfer Venue under § 1404(a) [Doc. 42] will be **DENIED**.

## V.   MOTION TO STAY

Defendants argue this action should be stayed pending resolution of an opposition proceeding before the U.S. Patent and Trademark Office's Trademark Trial and Appeal Board, *Taco Mamacita, LLC, f/k/a Taco Rosa, LLC v. Wilco Holdings, LLC*, Opposition No. 91241304. Taco Mamacita initiated the opposition proceeding on May 22, 2018 [Doc. 45-1 at 2], alleging it would be damaged by registration of the mark TACO MAMA A TACO BAR, as shown in Application No. 87152303, applied for by Wilco Holdings, LLC. [*Id.* at 8]. The Notice of Opposition indicates that Wilco filed a use-based application to register this mark on August 26, 2016.

---

[11] Defendants cite a Sixth Circuit case from 1958 in support of this proposition. Yet numerous cases have since held that a plaintiff's choice of forum is generally entitled to deference. *See Dowling v. Richardson-Merrell, Inc.*, 727 F.2d 608, 612 (6th Cir. 1984) ("[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed."); *Mayberry v. Nuclear Fuel Servs., Inc.*, No. 3:13-cv-499, 2013 WL 5560318 (E.D. Tenn. Oct. 7, 2013) (same); *West Am. Ins. Co. v. Potts*, 908 F.2d 974 (6th Cir. 1990) (table) ("A motion for change of venue is properly granted when the balance weighs 'strongly in favor of transfer.'" (quoting *Nicol v. Koscinski*, 188 F.2d 537 (6th Cir. 1951)); *MaxChief Invs. Ltd. v. Plastic Dev. Grp., LLC*, 2016 WL 7209553, *2 (E.D. Tenn. Dec. 12, 2016) ("If the court determines that the balance between the plaintiff's choice of forum and defendant's desired forum is even, the plaintiff's choice of forum should prevail." (cleaned up)).

31

Defendants argue that discovery in the TTAB proceeding lasted 2.5 years and closed on February 11, 2021. [Doc. 46 at 3]. According to Defendants, Plaintiffs filed the instant action four days prior to the pretrial disclosure deadline in the TTAB proceeding. [*Id.*]. Defendants believe this action should be stayed to avoid relitigating the same issues in this action, because the TTAB proceeding involves the same federal trademark application and registration, and "essentially the same dispositive issues." [*Id.*]. While this action has just begun, the TTAB proceeding was "actively litigated" for over three years. [*Id.*].

Plaintiffs respond that the parties moved for a number of suspensions and enlargements of time in the TTAB proceeding and entered a tolling agreement while they attempted to resolve this matter through settlement negotiations and mediation. [Doc. 51 at 2]. They contend that the total time the TTAB proceeding was suspended was approximately 28 of the 31 months of the discovery period. [*Id.* at 3]. Plaintiffs also take issue with the characterization of the TTAB proceeding as "actively litigated," in that Wilco propounded one set of interrogatories and requests for production. [*Id.* at 3-4]. While Defendants did obtain an expert report/survey, Plaintiffs argue they likely would have done so eventually, regardless of the forum or timing of the proceedings. [*Id.*]. In short, they contend that the time and expense the parties expended in the TTAB proceeding was not so significant that this litigation would delay the resolution of a proceeding near completion. [*Id.* at 4]. Finally, Plaintiffs observe that once Wilco's mark was published for opposition, the TTAB was the only forum available to oppose the mark. [*Id.*]. They note that the claims in this litigation are contemplated by the tolling agreement, which the parties voluntarily agreed to enlarge numerous times while they participated in mediation. [*Id.*].

Finally, Plaintiffs dispute Defendants' contention that this case will simply relitigate the same issues before the TTAB. To the contrary, Plaintiffs say the sole issue in the TTAB opposition

proceeding is whether there exists a likelihood of confusion between the two marks. [*Id.*]. Plaintiffs maintain that while that issue is also before the Court, this action also involves other causes of action and associated relief. [*Id.*]. The parties agree that whether to grant a stay pending the resolution of the TTAB opposition proceeding is within the discretion of the District Court. [*See* Doc. 51 at 6, Doc. 46 at 7].

"[D]istrict courts have inherent authority to manage their dockets and courtrooms with a view toward the efficient and expedient resolution of cases." *Dietz v. Bouldin*, 136 S. Ct. 1885, 1982 (2016). "Incident to that inherent authority is the 'broad discretion to stay proceedings.'" *Int'l Watchman Inc. v. Barton Watchbands Holdco, LLC*, 2021 WL 855119, *3 (N.D. Ohio March 8, 2021) (quoting *Clinton v. Jones*, 520 U.S. 681, 706 (1997)). The moving party bears the burden of demonstrating that a stay is warranted. *Clinton*, 520 U.S. at 709.

In *International Watchman*, the defendant moved to stay district court litigation pending resolution of proceedings before the TTAB involving the trademark that formed the basis of the dispute between the parties, and plaintiff opposed. *International Watchman*, 2021 WL 855119 at *1. The court laid out five factors that courts ordinarily consider in deciding whether to grant a stay:

> (1) the need for a stay; (2) the stage of the litigation; (3) whether the non-moving party will be unduly prejudiced or tactically disadvantaged; (4) whether a stay will simplify the issues; and (5) whether the burden of litigation will be reduced for both the parties and the court.

*Id.* (citation omitted). The court found that the district court case was in its early stages, but that the resolution of the TTAB cancellation proceeding would not necessarily simplify the issues. *Id.* The court reasoned that the TTAB decision would be appealable to a federal district court or the Federal Circuit, where it would be reviewed *de novo* and could involve new evidence. *Id.* Moreover, the TTAB proceeding involved the validity of a mark, which is a different issue than

33

whether a mark was infringed upon, "meaning that resolution of validity by TTAB may not resolve the infringement issue here." *Id.* at \*4. The court also felt the stay would cause some prejudice to the plaintiff, as the "lawsuit is Plaintiff's means to enforce and protect the mark." *Id.* Finally, the court observed that the defendant "must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else." *Id.* (cleaned up). Unlike the instant case, the defendant was not a party to the TTAB cancellation proceeding.

Weighing the factors applied in *International Watchman* and other cases, the Court finds that a stay is appropriate. Initially, Defendants' insistence that Plaintiffs are forum shopping or engaging in gamesmanship is not compelling in light of the parties' numerous extensions and tolling agreement, and their voluntary participation in settlement negotiations and mediation. Nor does it appear that discovery and motion practice in the TTAB proceeding have been so substantial that "[s]tarting over" would be a "colossal waste of party and judicial resources." [Doc. 46 at 3]. Still, it appears Wilco has propounded discovery and procured an expert report. [Doc. 51 at 4, 9].

Defendants also moved to stay this case in its earliest stages, which weighs in favor of a stay. The issues in this proceeding overlap with the issue before the TTAB – the validity of Wilco's mark. While there are other issues in this case, resolution of the TTAB opposition proceeding is very likely to narrow or clarify the scope of this litigation. And while the Court does not view Plaintiffs' conduct as dilatory or "eleventh hour," it is still true that Plaintiffs filed this action almost three years after initiating the opposition proceeding and over three years after discovering the alleged infringement of their mark. [*See* Doc. 1 at ¶¶ 35-36]. While an action in federal court is a trademark owner's means to enforce and protect its mark, the years that elapsed between Plaintiffs' discovery of the alleged infringement and the filing of this action cut against a finding

34

of prejudice to Plaintiffs. Indeed, Plaintiffs concede that the TTAB decision may be instructive or have some preclusive effect on this litigation. [*See* Doc. 51 at 10].

The Court agrees, and will stay this matter to allow the TTAB to reach a decision in the opposition proceeding, or until it is otherwise resolved. Having balanced the relevant factors and considered the arguments of the parties, the Motion to Stay [Doc. 45] will be **GRANTED** and this matter will be stayed until further Order of the Court.

## VI.  CONCLUSION

Accordingly, Defendants' Motion to Dismiss for Lack of Jurisdiction Under Rule 12(b)(2) and Improper Venue Under Rule 12(b)(3), or Alternatively, to Transfer Venue [Doc. 42] will be **GRANTED IN PART** and **DENIED IN PART** as follows:

- The Motion [Doc. 42] is **GRANTED IN PART** due to lack of personal jurisdiction as to all Defendants except Wilco Holdings, LLC, and Taco Mama Hillsboro Village, LLC.

- Specifically, claims against the following Defendants are **DISMISSED WITHOUT PREJUDICE**: Haver & Co., LLC; Taco Mama 119, LLC; Taco Mama Alabaster, LLC; Taco Mama Auburn, LLC; Taco Mama Baldwin, LLC; Taco Mama Burke Mill Village, LLC; Taco Mama Central City, LLC; Taco Mama Clift Farm, LLC; Taco Mama Dilworth, LLC; Taco Mama Edgewood, LLC; Taco Mama Florence, LLC; Taco Mama Hoover, LLC; Taco Mama Huntsville, LLC; Taco Mama Jones Valley, LLC; Taco Mama Lawnsdale, LLC; Taco Mama Montgomery, LLC; Taco Mama Providence, LLC; Taco Mama Summit, LLC; Taco Mama Transportation, LLC; Taco Mama Trussville, LLC; Taco Mama Tuscaloosa, LLC; Wilco Hospitality, LLC; and Wilco Services Group, LLC.

- The Motion [Doc. 42] is **DENIED** as to all remaining requests for relief.

The Motion to Stay Case Pending Proceedings at the Trademark Trial and Appeal Board [Doc. 45] is **GRANTED**. This case is **STAYED** until further Order of the Court. The parties are **ORDERED** to file a joint status report regarding the TTAB proceeding within **60 days** from the date of this Order and every 60 days thereafter. The parties are **FURTHER ORDERED** to file a joint report within **7 days** of the completion or resolution of the TTAB proceeding.

        **SO ORDERED**.

                                        */s/ Charles E. Atchley, Jr.*
                                        CHARLES E. ATCHLEY, JR.
                                        UNITED STATES DISTRICT JUDGE